**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FEATHERSTONE ENTERTAINMENT, LLC<br><br>*Plaintiff*,<br><br>-against-<br><br>SITUATIONSHIPS THE FILM LLC, GRAND HUSTLE FILMS, LLC, YANELEY ARTY, AND CLIFFORD JOSEPH HARRIS JR. P/K/A "T.I."<br><br>*Defendants*. | Civil Action No. 1:25-cv-5124 |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR DEFAULT JUDGMENT AGAINST DEFENDANT
SITUATIONSHIPS THE FILM, LLC**

## TABLE OF CONTENTS

**Table of Contents**

FACTUAL BACKGROUND ................................................................................................. 5

PROCEDURAL HISTORY ................................................................................................. 6

ARGUMENT ....................................................................................................................... 7

   DEFAULT JUDGMENT IS APPROPRIATE AS DEFENDANT HAS FAILED TO APPEAR
   OR TIMELY ANSWER FEATHERSTONE'S SUMMONS AND COMPLAINT DESPITE
   RECEIVING PROPER SERVICE. ................................................................................... 7

   THIS COURT HAS SPECIFIC JURISDICTION OVER DEFENDANT TO GRANT
   FEATHERSTONE'S MOTION FOR DEFAULT JUDGMENT. .............................................. 11

   FEATHERSTONE IS ENTITLED TO DAMAGES, REASONABLE ATTORNEYS' FEES,
   AND PRE- AND POST-JUDGMENT INTEREST. .............................................................. 14

   FEATHERSTONE IS ENTITLED TO A PERMANENT INJUNCTION. ............................. 18

CONCLUSION .................................................................................................................. 20

# TABLE OF AUTHORITIES

## Cases

*4 Pillar Dynasty LLC v. N.Y. & Co.,* 933 F.3d 202, 212 (2nd Cir. 2019)......................................15

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), ..............................................................................8

*Bambu Sales, Inc. v. Ozard Trading Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) ..........................15, 17

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)................................................11

*Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010) ............................13

*City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011)...............passim

*Daisy Group, Ltd. v. Newport News, Inc.,* 999 F. Supp. 548 (S.D.N.Y. 1998) ............................14

*Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006)......................................11

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). ...................................................18

*Ehrenfeld v. Bin Mahfouz,* 9 N.Y.3d 501, 508 (2007) ..................................................................12

*Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007) ...........................................................................12

*George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1537 (2d Cir. 1992)). .......................14, 15

*Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005) .....................11

*Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2nd Cir. 1992)..........8

*GTFM, Inc. v. Solid Clothing, Inc.*, 215 F. Supp. 2d 273 (S.D.N.Y. 2002) .................................17

*Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 454–55 (2d Cir. 2013) .............................8

*Harris v. Fairweather*, 11-cv-2152 (PKC) (AJP), 2012 U.S. Dist. LEXIS 128409, at *38-40
(S.D.N.Y. Sep. 10, 2012 ...........................................................................................................18

*Heritage of Pride, Inc. v. Matinee of NYC,* 2014 WL 12783866, at *11 (S.D.N.Y. June 20, 2014).
.................................................................................................................................................16

*Ideavillage Products Corp. v. Bling Boutique Store,* No. 16-CV-9039, 2018 WL 3559085, at *2
(S.D.N.Y. July 24, 2018)............................................................................................................8

*Indymac Bank, F.S.B. v. National Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652,
at *1 (S.D.N.Y. Dec. 20, 2007); ................................................................................................8

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703, 102 S.Ct. 2099,
72 L.Ed.2d 492 (1982 ..............................................................................................................13

*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 313–16 (1945) ........................................................11

Int'l Star Class Yacht Racing Assoc. v. Tommy Hilfiger, U.S.A., Inc., 80 F.3d 749, 753 (2d
Cir.1996). .................................................................................................................................14

*Licci v. Lebanese Canadian Bank*, 960 N.Y.S.2d 695, 702-03 (2012) .........................................12

*Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168-69 (2d Cir. 2013) ...........................12

*McGowan v. Smith,* 52 N.Y.2d 268, 272 (1981). ..........................................................................12

*N.A.S. Imp. Corp. v. Chenson Enters.*, 968 F.2d 250, 252 (2d Cir. 1992)......................................9

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 326 (S.D.N.Y.
2010). .......................................................................................................................................19

*NYP Holdings v. New York Post Pub. Inc.,* 63 F. Supp. 3d 328, 341 (S.D.N.Y. 2014 .................19

*Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 122 (2d. Cir. 2021) ................................................................................................................... 12

*See Gucci Arn., Inc. v. Tyrrell-Miller,* 678 F. Supp. 2d 117, 120 (S.D.N.Y. 2008) ...................... 18

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC,* 450 F.3d 100, 103 (2d Cir. 2006) ......... 12

*State v. Vayu, Inc.,* 39 N.Y.3d 330, 334 (2023) ...................................................................... 13

*Steele v. Bell,* 2014 U.S. Dist. LEXIS 44976, at *22 (S.D.N.Y. Mar. 3, 2014) ........................... 18

*Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1382 (2d Cir. 1993) ..................... 9

*Victorinox AG v. B & F Sys.,* No. 13 Civ. 4534, 2015 U.S. Dist. LEXIS 1699, *13 (S.D.N.Y. Dec. 15, 2015) ................................................................................................................... 15

*W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 662 (2d Cir. 1970 .......................................... 15

*WowWee Group Ltd. v. Meirly*, 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019) ................... 11

*WowWee Group Ltd. v. Meirly*, 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019). ................... 8

*WpIX, Inc. v. lvl, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012). ..................................................... 20

*Yahoo! Inc. v. XYZ Cos.*, 872 F. Supp. 2d 300, 309 (S.D.N.Y. 2001) ...................................... 15

## Statutes

15 U.S.C. § 1116 .................................................................................................................. 17

Federal Rule of Civil Procedure 55(b) ..................................................................................... 6

Section 1117(a) ............................................................................................................... 13, 14

Plaintiff Featherstone Entertainment LLC ("Featherstone") hereby submits this Memorandum of Law in support of its Motion for Default Judgment and Permanent Injunction against defendant, Situationships the Film LLC ("Defendant"), and states as follows:

## FACTUAL BACKGROUND

Featherstone is the rightful owner of the federally registered trademark SITUATIONSHIPS for entertainment services with a first use date of February 14, 2015. In 2014, Featherstone conceptualized the SITUATIONSHIPS brand as a web series and developed it independently. The series was first filmed in 2015, with the premiere season achieving over 500,000 views in its first year. Featherstone also expanded the SITUATIONSHIPS brand with copyrighted works, including a book in 2017, a television pilot in 2020, and a film in 2023. On January 8, 2025, Featherstone launched the official SITUATIONSHIPS Podcast with RevoltTV. Featherstone's SITUATIONSHIPS trademark became registered with the United States Patent and Trademark Office ("USPTO") on September 12, 2023 with a first use date of February 14, 2015, in International Class 041, for entertainment services related to dramatic and comedic content depicting the ups and downs of dating. Featherstone's SITUATIONSHIPS digital series has been distributed on prominent platforms, including Blavity (2017), BET Digital (2018), Amazon Prime, and Tubi (2022), reaching millions of viewers.

Defendant seeks to take advantage of and draw on the public's association of Featherstone's SITUATIONSHIPS mark by marketing and producing their own entertainment services, namely a film, and promotional goods using Featherstone's SITUATIONSHIPS mark for their own financial gain. Defendant has submitted multiple trademark applications with the USPTO for marks confusingly similar to Featherstone's SITUATIONSHIPS mark, namely "City of Situationships" and "(SIT'CHU{Ā}SHUN·SHIPS)" in the *same* International Class 041 and in

the *same* comedic genre as Featherstone, to market, brand, and promote their film and products, thereby creating a false association with Featherstone's brand. In Defendant's "City of Situationships" trademark application, it indicates its address is 545 5th Avenue, Suite 1100, New York, New York 10017. On May 12, 2025, the USPTO issued an Office Action to Defendant for its applied for mark, to which Defendant responded on August 12, 2025. Defendant's applied-for marks are at issue in this litigation.

## PROCEDURAL HISTORY

Featherstone filed a Summons and Complaint as well as a Motion for Temporary Restraining Order and Preliminary Injunction ("TRO Application") against Defendant on June 18, 2025. The Complaint alleges six counts against Defendant for: Federal Trademark Infringement Under 15 U.S.C. § 1114, Federal False Designation of Origin Under 15 U.S.C. § 1125(a), Unfair Competition Under New York Common Law, Civil Conspiracy, Trademark Infringement Under New York Common Law, and Declaratory Judgment.

This Court issued a Summons informing Defendant that it must serve an Answer on Plaintiff within 21 days of receiving the Summons and Complaint. The Court issued Summons continued "[i]f you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court."

Defendant was served with the Summons, Complaint, and Featherstone's TRO Application on June 23, 2025. Service was made upon Defendant's registered agent who is designated by law to accept service of process on behalf of Defendant at 11175 Cicero Drive Suite 100, Alpharetta, Georgia 30022, via process server. Service of Featherstone's documents was received and accepted by Danielle Gindel at this address. Defendants were also served with physical paper copies of the Summons, Complaint, and TRO application by certified mail on June 25, 2025.

Defendant had until July 16, 2025, at most, to respond to Featherstone's papers. That time has expired and Defendant has failed to appear, file an Answer, or any responsive paper to Featherstone's Summons and Complaint or TRO Application in this action by that deadline or since—nearly two months beyond the deadline.

This Court held an in-person hearing on June 26, 2025 on Featherstone's TRO Application. Defendant did not respond to Featherstone's Application nor did it appear before the Court for the hearing. At the conclusion of the hearing, this Court granted Featherstone's Application, ordering Defendant to suspend use and promotion of their applied for marks, on the basis that Defendant's use is likely to cause confusion with Featherstone's trademark.

Featherstone filed a Request for Entry of Default, Affidavit in Support, and Proposed Order with the Clerk of this Court on September 3, 2025. Featherstone also mailed a copy of these documents to Defendant, informing Defendant that it was seeking default judgment be entered against Defendant. On September 4, 2025, the Clerk of this Court entered a Certificate of Default against Defendant. Featherstone served a copy of the Clerk's Certificate of Default on Defendant on September 9, 2025.

## ARGUMENT

### I.    DEFAULT JUDGMENT IS APPROPRIATE AS DEFENDANT HAS FAILED TO APPEAR OR TIMELY ANSWER FEATHERSTONE'S SUMMONS AND COMPLAINT DESPITE RECEIVING PROPER SERVICE.

Under Federal Rule of Civil Procedure 55(b) a court-ordered default judgment may be entered following the entry of default by the court clerk under Rule 55(a). "[E]ntry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011); *see also* Fed. R. Civ. P. 55(a). The rule provides that: "[w]hen a party against

whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a); *see also City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (internal quotation marks omitted) ("It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint."); *see also Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2nd Cir. 1992) (stating that "a party's default is deemed to constitute a concession of all well-pleaded allegations of liability.") A factual allegation will be deemed not well-pled "only in very narrow, exceptional circumstances." *Ideavillage Products Corp. v. Bling Boutique Store,* No. 16-CV-9039, 2018 WL 3559085, at *2 (S.D.N.Y. July 24, 2018) (internal quotation marks and citation omitted).

In determining whether to grant a motion for default judgment, the Court must consider "(1) whether the defendant's default was willful; (2) whether defendant has a meritorious defense; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Indymac Bank, F.S.B. v. National Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007); *see also Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 454–55 (2d Cir. 2013). The legal sufficiency of a non-defaulting party's claims "is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the movant's favor." *WowWee Group Ltd. V. Meirly*, 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019).

Featherstone sought an entry of default with the Clerk of this Court, pursuant to FRCP 55(a) on September 3, 2025. The clerk of this Court entered an entry of default against Defendant on September 4, 2025. Therefore, "defendant has, through its failure to defend the action, admitted

liability to the plaintiff." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011).

Defendant's refusal to appear in this action or answer Featherstone's Summons and Complaint, despite proper service, warrants granting Featherstone's motion for default judgment. Defendant is aware of this litigation. Defendant was lawfully served, pursuant to Fed. R. Civ. P. 4, with the Summons, Complaint, and Featherstone's TRO Application on June 23, 2025. Service was made upon Defendant's registered agent who is designated by law to accept service of process on behalf of Defendant at 11175 Cicero Drive Suite 100, Alpharetta, Georgia 30022. Featherstone also served Defendant with a physical paper copy of the aforementioned documents by certified mail on June 25, 2025. Under Fed. R. Civ. P. 12, Defendant's Answer was due by July 16, 2025— 21 days after service. That time has expired and Featherstone has given Defendant ample time to appear in this action despite its election not to do so. Even more remarkably, Defendant did not appear before the court during the in-person hearing on June 26, 2025 on Featherstone's TRO Application.

Defendant's actions, or inactions rather, are willful and it lacks a meritorious defense. The standard for willfulness is "whether the defendant had knowledge that its conduct represented infringement or perhaps recklessly disregarded the possibility." *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1382 (2d Cir. 1993). This knowledge may be actual or constructive and may be inferred from defendant's conduct rather than proven directly. *N.A.S. Imp. Corp. v. Chenson Enters.*, 968 F.2d 250, 252 (2d Cir. 1992). On November 15, 2024, Defendant filed an application with the USPTO for the mark "CITY OF SITUATIONSHIPS" in the same International Class 041 as Featherstone. Featherstone's trademark has been listed on the USPTO's federal register since September 12, 2023 with a first use date of February 14, 2015. Moreover,

Featherstone communicated with Defendant's camp about their infringing marks prior to filing suit but was ignored. Defendant had both personal and constructive knowledge of Featherstone's "SITUATIONSHIPS" trademark. "[D]efendant has, through its failure to defend the action, admitted liability to the plaintiff." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011).

Defendant's disregard for the judicial process is also willful. The same law firm that represents all other co-Defendants in this action, Newell Law Group, has actively responded to USPTO Office Actions on behalf of Defendant concerning the infringing trademarks at issue in this litigation. On August 12, 2025, Newell Law Group, counsel to co-Defendants Grand Hustle Films, LLC; Yaneley Arty; and Clifford Joseph Harris Jr. p/k/a "T.I.," submitted Defendant's response to a USPTO Office Action on Defendant's applied for trademark "City of Situationships." Co-defendant T.I., who is represented in this litigation, is listed as an Organizer on Defendant's Articles of Organization. Defendant has intentionally elected to seek representation for its USPTO submissions while refusing to retain counsel to appear or defend itself in this action. Defendant has simply chosen not to appear, answer, or defend itself in this Court despite being well aware of this litigation against it and receiving proper service. There is no explanation for Defendant's silence and inaction. For these same reasons, Defendant does not have a meritorious defense, as Defendants are actively participating in the USPTO's trademark process while willfully ignoring the rules of this Court.

Featherstone would be prejudiced should the Court refuse to grant its Motion for Default Judgment. Featherstone made attempts to resolve the underlying matters in this case with Defendant prior to filing suit. Rather than reach a resolution, Defendant left Featherstone with no other option than to file suit to seek relief from this ordeal involving its lawfully registered

trademark. Defendant also has not withdrawn its trademark application. Rather, it continues to seek approval from the USPTO for its applied-for marks despite their likelihood of causing confusion with Featherstone's mark. Inferences are to be drawn "in the movant's favor," *WowWee Group Ltd. V. Meirly*, 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019). This Court previously granted Featherstone's TRO Application on the basis that Defendant's applied-for marks are likely to cause confusion with Featherstone's trademark. Denying Featherstone's motion would reward Defendant for its improper conduct. Defendant's willful disregard for the judicial process and federal rules makes default judgment against Defendant appropriate.

## II.  THIS COURT HAS SPECIFIC JURISDICTION OVER DEFENDANT TO GRANT FEATHERSTONE'S MOTION FOR DEFAULT JUDGMENT.

This Court has specific personal jurisdiction over the Defendant. To exercise personal jurisdiction over a defendant, the court must look to whether there is jurisdiction under the applicable statute and whether the exercise of jurisdiction is consistent with due process. *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005). Due process requires the defendant have sufficient minimum contacts with the forum in which the defendant is sued such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 313–16 ("[t]he constitutional touchstone of the determination whether an exercise of personal jurisdiction comports with due process remains whether the defendant purposefully established 'minimum contacts' in the forum State.") (cleaned up).

New York's long-arm statute establishes personal jurisdiction over any person who "transacts any business in New York and, if so, whether this cause of action 'aris[es] from such a business transaction.'" *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (*citing Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006)) (alteration in the

original). A defendant "transacts business" within New York when it "purposefully avails itself of the privilege of conducting activities within New York[.]" *Ehrenfeld v. Bin Mahfouz,* 9 N.Y.3d 501, 508 (2007) (internal citations and alteration omitted). Purposeful availment is the "overriding criterion" necessary to establish personal jurisdiction pursuant to § 302(a)(1). *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 122 (2d. Cir. 2021) (when specific jurisdiction is asserted, the "minimum contacts necessary to support such jurisdiction exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there.").

"Purposeful activities are those with which a defendant, through volitional acts, avails itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws[.]" *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007) (internal citations and quotation marks omitted). A claim "arises from" a particular transaction "when there is 'some articulable nexus between the business transacted and the cause of action sued upon,' . . . or when 'there is a substantial relationship between the transaction and the claim asserted[.]'" *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (*quoting McGowan v. Smith,* 52 N.Y.2d 268, 272 (1981). The Second Circuit has noted that "[t]he determination of whether an articulable nexus exists is to be made in light of all the circumstances, and only requires that the legal claim not [be] completely unmoored from the defendant's New York business activity." *Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168-69 (2d Cir. 2013) (cleaned up). "[T]he 'arise-from' prong limits the broader 'transaction-of business' prong to confer jurisdiction only over those claims in some way arguably connected to the transaction." *Licci v. Lebanese Canadian Bank*, 960 N.Y.S.2d 695, 702-03 (2012).

Section 302 is a "single act statute and proof of one transaction in New York is sufficient to invoke jurisdiction," even though the defendant, or a non-domiciliary, never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the defendant's act and the claim. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010). A single act can suffice for establishing personal jurisdiction under § 302(a)(1). *State v. Vayu, Inc.,* 39 N.Y.3d 330, 334 (2023). Furthermore, the law is clear that "long-arm jurisdiction is appropriately exercised over commercial actors who have…used electronic…means to project themselves into New York to conduct business transactions." *Id.* at 334 (cleaned up).

Defendant purposefully availed itself of the privilege of conducting activities within New York and therefore, this Court has specific personal jurisdiction[1] over Defendant. While Defendant is incorporated in the state of Georgia, Defendant has a New York office address from which it conducts trademark business activities. Defendant filed a trademark application with the USPTO for the mark "City of Situationships" on November 15, 2024. Listed as Owner of the applied for mark is Defendant, Situationships the Film, LLC, with the address 545 5th Avenue, Suite 1100, New York, New York 10017. Furthermore, the existence of Defendant's office is purposeful, as it required Defendant to investigate a suitable address, register, and pay for it. Defendant cannot seek to benefit from New York without being subject to the consequences of availing itself of this

---

[1] "Personal jurisdiction, unlike subject-matter jurisdiction, can be purposely waived or inadvertently forfeited." *The City of N.Y. v. Mickalis Pawn Shop LLC*, 2011 WL 1663427, 645 F.3d 114, 79 Fed.R.Serv.3d 682 (2nd Cir. 2011). "Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) (cautioning that there is nothing "unique about the requirement of personal jurisdiction, which prevents it from being established or waived like other rights"). A district court is permitted, but is not required, to investigate whether it has personal jurisdiction over a defaulting defendant because in some circumstances a defaulting defendant may have waived personal jurisdiction by virtue of its default. *See Mickalis Pawn Shop*, 645 F.3d at 133-34. Nevertheless, this Court has specific personal jurisdiction over Defendant.

forum. As Section 302 is a "single act statute," Defendant's act of maintaining an office in New York is sufficient. Defendant's trademark business activities from this New York address further solidifies Defendant's volitional acts within the state.

There is a direct nexus between Defendant's trademark business activities from New York and the claims asserted. Featherstone's claims hinge on Defendant's acts of infringement on Featherstone's trademarks. The trademark Defendant has tied to its New York office address is the same trademark upon which Featherstone makes its claims. There is a direct, but at the very least articulable, nexus between Defendant's New York trademark business activities and Featherstone's claims.

### III.    FEATHERSTONE IS ENTITLED TO DAMAGES, REASONABLE ATTORNEYS' FEES, AND PRE- AND POST-JUDGMENT INTEREST.

Section 1117(a) of the Lanham Act provides that if a plaintiff establishes liability for a violation of the Act, "the plaintiff shall be entitled . . . subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." "Recovery of damages to an injured plaintiff may include compensation for lost sales and harm to market reputation." *Int'l Star Class Yacht Racing Assoc. v. Tommy Hilfiger, U.S.A., Inc.,* 80 F.3d 749, 753 (2d Cir.1996).

"The Second Circuit has explained that there are three distinct bases for an award of profits for a violation of the Lanham Act. Profits are available where (1) the defendant has been unjustly enriched; (2) the plaintiff has sustained damages from the infringement; or (3) such an award is necessary to deter a willful infringer from doing so again." *Daisy Group, Ltd. v. Newport News, Inc.,* 999 F. Supp. 548 (S.D.N.Y. 1998) (*citing George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1537 (2d Cir. 1992)). "Thus, an award of profits may serve as restitution for unjust

enrichment, as 'a rough proxy measure of plaintiff's damages,' or 'to protect the public at large... [from] fraud regarding the source and quality of consumer goods and services.'" *Id*. at 1538-1539.

"[I]n our Circuit, a plaintiff need not establish actual consumer confusion to recover lost profits under the Lanham Act." *4 Pillar Dynasty LLC v. N.Y. & Co.,* 933 F.3d 202, 212 (2nd Cir. 2019). "A court may award a Lanham Act plaintiff an infringing defendant's profits upon a finding of bad faith." *Id*. "A court may award a defendant's profits solely upon a finding that the defendant fraudulently used the plaintiff's mark." *Id.* at 213 (citing *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532 (2d Cir. 1992)). "By awarding the profits of a bad faith infringer to the rightful owner of a mark,…we promote the secondary effect of deterring public fraud regarding the source and quality of consumer goods and services." *George Basch, 968 F.2d at 1539.* "It is essential to deter companies from willfully infringing a competitor's mark and disgorgement of profits is the only way the courts can fashion a strong enough deterrent." *4 Pillar Dynasty,* 933 F.3d at 213 (citing *W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 662 (2d Cir. 1970)) (cleaned up). "The deterrence rationale for disgorgement of profits, focuses on the culpability of the willful infringer." *4 Pillar Dynasty,* 933 F.3d at 213.

The Lanham Act also permits courts to award reasonable attorneys' fees to prevailing parties in "exceptional cases." See 15 U.S.C. §1117(a). "It is well settled that 'exceptional cases' include willful infringement of a mark." *Bambu Sales, Inc. v. Ozard Trading Inc*., 58 F.3d 849, 854 (2d Cir. 1995) ("Exceptional circumstances include willful infringement."); *Victorinox AG v. B & F Sys.,* No. 13 Civ. 4534, 2015 U.S. Dist. LEXIS 1699, *13 (S.D.N.Y. Dec. 15, 2015) (same, and noting that "[t]he finding of willfulness determines the right to attorneys' fees."); *Yahoo! Inc. v. XYZ Cos.*, 872 F. Supp. 2d 300, 309 (S.D.N.Y. 2001) ("'exceptional cases' [are] generally, those trademark infringement cases in which infringement is willful.").

Featherstone seeks, and is entitled to, damages arising from Defendant's willful conduct, its unjust enrichment from Featherstone's decade's old brand, an award of profits, loss of goodwill and reputation, damages to Featherstone, costs of this action, and attorney's fees. Defendant acted with bad faith when it infringed on Featherstone's trademark through the production and promotion of its film entitled "Situationships." Defendant had knowledge of Featherstone's trademark prior to the creation and promotion of its film. By way of example, Defendant's associate and co-producer, and co-Defendant in this action, Yaneley Arty, spoke with Featherstone about collaborating to distribute Featherstone's SITUATIONSHIPS series. Despite Arty's interest in the possible collaboration those conversations ended. A short while later, Featherstone learned Arty had joined Defendant's Situationships' film production via an audition invitation listing Arty as the film's producer. Featherstone communicated with Defendant's team about the infringing nature of its use of Featherstone's SITUATIONSHIPS trademark, but despite multiple conversations, Defendant forged ahead. Specifically, Featherstone was told on multiple occasions that Defendant would not cease use of Featherstone's SITUATIONSHIP mark for the title of the film. In a November 2024, STARZ interview with rapper Fat Joe, co-Defendant T.I., Organizer for Defendant stated: "I'm about to film my second franchise, I guess you could call it, as a writer and director. It's called 'Situationships.' I also star in this one which is something I haven't done. I haven't directed and starred at the same time." When asked: "Directed, wrote it, filmed it. Now you're gonna act in it?" T.I. responded: "Yeah." T.I. went on to mention that the film is a comedy, the same genre of Featherstone's SITUATIONSHIPS content. T.I. went on to celebrate its film production with a wrap party. This is the definition of bad faith. "[A]ctual or constructive knowledge of the prior user's mark or dress may indicate an absence of good faith or bad faith." *Heritage of Pride, Inc. v. Matinee of NYC,* 2014 WL 12783866, at *11 (S.D.N.Y. June 20, 2014).

Defendant's conduct is deliberate and willful. If Defendant's bad faith alone was not sufficient to make this an exceptional case, Defendant continues to file submissions with the USPTO in effort to register its marks—disregarding the existence of Featherstone's registered trademark. Even Defendant's name "Situationships the Film LLC" demonstrates its intention to move forward with its use of Featherstone's SITUATIONSHIPS mark. Trademark law exists to protect the rights of a superior trademark owner. A "disgorgement of [Defendant's] profits is the only way th[is] court[] can fashion a strong enough deterrent" against this willful infringement. *4 Pillar Dynasty,* 933 F.3d at 213. Upon information and belief, upon Defendant's pitch of its upcoming "Situationships" film, Defendant received $3,000,000. Featherstone requests this court order a disgorgement of Defendant's profits.

Moreover, this Court should find that this is an exceptional case and award Featherstone reasonable attorneys' fees and pre-judgment interest in this action. "Exceptional cases include willful infringement of a mark." *Bambu Sales, Inc. v. Ozard Trading Inc*., 58 F.3d 849, 854 (2d Cir. 1995). "Although Section 1117(a) does not provide for prejudgment interest, such an award is within the discretion of the trial court and is normally reserved for exceptional cases." *GTFM, Inc. v. Solid Clothing, Inc*., 215 F. Supp. 2d 273 (S.D.N.Y. 2002) (internal citations and quotations omitted) (cleaned up) (holding that "[i]n light of [Defendant's] willful intent to profit illegally from the goodwill of [Plaintiff's] brand, prejudgment interest is appropriate in this case." For the reasons stated above, Defendant's conduct constitutes willful infringement.

Furthermore, 28 U.S.C. § 1961 provides for post-judgment interest "on any money judgment in a civil case recovered in a district court." Accordingly, Featherstone seeks an award of post-judgment interest.

## IV.    FEATHERSTONE IS ENTITLED TO A PERMANENT INJUNCTION.

Featherstone requests that this Court permanently enjoin Defendant from any further infringement on its trademark. Under the Lanham Act, a district court has authority to grant injunctive relief to prevent further violations of a Plaintiff's trademarks and to grant a permanent injunction on a motion for default judgment. *See* 15 U.S.C. § 1116; *see also Harris v. Fairweather*, 11-cv-2152 (PKC) (AJP), 2012 U.S. Dist. LEXIS 128409, at *38-40 (S.D.N.Y. Sep. 10, 2012) (holding that in considering a default, permanent injunctive relief was appropriate under the Lanham Act taking the complaint's allegations as true).

A permanent injunction may be granted where a plaintiff demonstrates that it has succeeded on the merits and: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Permanent injunctions are normally granted in intellectual property actions when there is a threat of continuing violations. *Steele v. Bell,* 2014 U.S. Dist. LEXIS 44976, at *22 (S.D.N.Y. Mar. 3, 2014).

On July 9, 2025, this Court relied on this injunctive relief standard in granting Featherstone's TRO Application enjoining Defendant from conducting commercial and promotional activities utilizing the words "Situationships," "Battle of The Situationships," "City of Situationships," or "(SIT ' CHU{A}SHUN·SHIPS)." Because Defendant's default is deemed an admission of liability, Featherstone established success on the merits. *See Gucci Arn., Inc. v. Tyrrell-Miller,* 678 F. Supp. 2d 117, 120 (S.D.N.Y. 2008) ("[T]he Court finds that plaintiffs have

established success on the merits because the defendants default constitutes an admission of liability") (cleaned up).

"[I]rreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark because loss of control over one's reputation is neither calculable nor precisely compensable." *NYP Holdings v. New York Post Pub. Inc.,* 63 F. Supp. 3d 328, 341 (S.D.N.Y. 2014). Should Defendant be permitted to continue use of Featherstone's mark, Featherstone's mark will become overshadowed by Defendant's use of the mark, thereby "los[ing] control over the reputation of its trademark." *Id.* Featherstone has invested ten years of time, energy, funds, and talent to building the SITUATIONSHIP brand. It worked its way to visual distribution on prominent platforms, including Blavity, BET Digital, Amazon Prime, and Tubi, reaching millions of viewers. The reputation Featherstone worked so diligently to build would be in the hands of those who had no part in building it alongside Featherstone. There is no price one can put on ten years of creating and building an original idea from scratch and seeing it "hit the big screen," only for that work to be swallowed up by those with bigger pockets. For these very reasons, the remedies available at law would be inadequate to compensate Feathersone for this injury.

"[T]he immediate and irreparable harm to [Featherstone] resulting from [Defendants'] unlawful acts would far exceed any theoretical harm to [Defendants] from an improvidently granted injunction." *New York City Triathlon, LLC v. NYC Triathlon Club, Inc*., 704 F. Supp. 2d 305, 326 (S.D.N.Y. 2010). Defendant would not suffer hardship if restrained and enjoined by this Court from continuing to engage in its infringing conduct. Defendant has knowledge that it is infringing on Featherstone's mark and that this infringement is likely to cause confusion. The parties communicated about this matter prior to the commencement of this litigation. The

likelihood that Defendant's infringement could cause confusion is further evidenced by this Court's Order granting Featherstone's TRO Application. Defendant cannot credibly argue hardship after knowingly infringing on Featherstone's mark. "An infringer [...] cannot complain about the loss of ability to offer its infringing products." *WpIX, Inc. v. lvl, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012).

The public interest would not be disserved by a permanent injunction. The public has an interest in not being confused as to the source or quality of a good or service. The consuming public would be confused regarding the source of Defendant's goods and services bearing Featherstone's mark. Furthermore, protecting the right of a superior trademark owner, who conducted the appropriate steps of securing a federally registered trademark from a subsequent infringer, is in the public's interest. To determine otherwise would make the significance of a valid trademark null and void.

Lastly, there is a threat of Defendant's continuing violations. Defendant seeks approval of its infringing trademark through its continued submissions to the USPTO, seeking registration of its infringing marks despite knowledge of Featherstone's marks and this litigation. Its actions not only threaten that it will infringe on Featherstone's trademark but indicates its willful intent to continue to do so. The threat is in Defendant's name— "Situationships the Film LLC." An injunction permanently enjoining Defendant from moving forward with its willful infringement is proper.

## CONCLUSION

For the foregoing reasons, Featherstone respectfully requests that the Court grant its Motion for Default Judgment and a Permanent Injunction against Defendant, Situationships the Film LLC, in its entirety.

Dated: September 12, 2025
     New York, New York

Respectfully submitted,

DESTIME LAW LLC
*/s/ Vanessa Destime*
Vanessa Destime
26 Broadway, Suite 934
New York, NY 10004
vanessa@destimelaw.com
(914) 365-8980

*Attorneys for Plaintiff Featherstone*
*Entertainment, LLC*